UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

SUSAN N. BURGESS and CARMEN COLEMAN,

                              Plaintiffs               DECISION AND ORDER

-vs-

                                                     07-CV-6558 CJS

FAIRPORT CENTRAL SCHOOL DISTRICT,
BOARD OF EDUCATION OF THE FAIRPORT
CENTRAL SCHOOL DISTRICT, KEVIN RATCLIFFE,
in his personal and official capacities, GOLDSTEIN
ACKERHALT & PLETCHER, LLP and
JAY C. PLETCHER,

                              Defendants

_____

APPEARANCES

For Plaintiff Susan N. Burgess:    Susan N. Burgess, *pro se*
                                    13 Market Street
                                    Brockport, New York 14420

For Plaintiff Carmen Coleman:    Carmen Coleman, *pro se*
                                    30 Princeton Lane
                                    Fairport, New York 14450

For Defendants Fairport
Central School District, Board
of Education of the Fairport
Central School District, and
Kevin Ratcliffe:                    Frank W. Miller, Esq.
                                    The Law Firm of Frank W. Miller
                                    6575 Kirkville Road
                                    East Syracuse, New York 13057

For Defendants Goldstein,
Ackerhalt & Pletcher, LLP
and Jay C. Pletcher:             Charles C. Swanekamp, Esq.
                                    Jaeckle Fleischmann & Mugel LLP
                                    12 Fountain Plaza, Suite 800
                                    Buffalo, New York 14202

INTRODUCTION

In this action Plaintiffs allege federal claims pursuant to 42 U.S.C. § 1983, Section 504 of the Rehabilitation Act, and 18 U.S.C. § 2520, as well as a New York State law claim entitled "interference with business."  Now before the Court are the following motions: 1) a motion [#4] for summary judgment under Federal Rule of Civil Procedure ("FRCP") 56 and for sanctions under FRCP 11 by Defendants Goldstein, Ackerhalt and Pletcher, LLP and Jay C. Pletcher (collectively "the Pletcher Defendants"); and 2) a motion [#12] for summary judgment under FRCP 56 and for sanctions under FRCP 11 by Defendants Fairport Central School District, Board of Education of the Fairport Central School District, and Kevin Ratcliffe (collectively "the District Defendants").  For the reasons that follow, the applications for summary judgment are granted, and the applications for sanctions are denied.

BACKGROUND

Unless otherwise noted, the following are the undisputed facts of this case.  At all relevant times, Plaintiff Carmen Coleman ("Coleman") was the mother of a child who attended the defendant Fairport Central School District ("the school").  At all relevant times, Defendant Kevin Ratcliffe ("Ratcliffe") was an administrator employed at the defendant school.  At some time prior to August 4, 2006, Coleman demanded an impartial hearing concerning the provision of special education services to her child, pursuant to the Individuals with Disabilities in Education Act ("IDEA") and Section 504 of the Rehabilitation Act ("Section 504").  In connection with that demand, Coleman retained the services of an attorney, Plaintiff Susan N. Burgess, Esq. ("Burgess").

On August 4, 2006, Coleman and Burgess met with the school district's attorney, Defendant Jay Pletcher ("Pletcher"), in a conference room at the school district's

administrative offices.   The meeting began at approximately 11:30 a.m. and ended at

approximately 1:30 p.m.   During the meeting, Coleman, Burgess and Pletcher discussed

a proposed settlement.   In that regard, Burgess described the initial discussion that day as

follows:

> Initially, only Mr. Pletcher came into the conference room with Coleman and
> me.  He also had a file that appeared to contain case materials.  In relation
> to where Coleman and I were seated, this file was sitting on the far north
> corner of the west side of the square of tables.
>
> Pletcher did not sit where his materials were located, however.  Rather, he sat
> directly to the left of me, and Coleman to my right.
>
> Before sitting down next to me, Pletcher placed a device that looked like a
> PDA [personal digital assistant] on the far south corner of the west side of the
> square of tables.  This put the PDA or other device very near Pletcher's left
> arm and about two to three feet from me.

(Burgess Affidavit ¶ ¶ 9-11).   It is undisputed that Pletcher's PDA was a combination

PDA/cell phone.   After that discussion, Pletcher left the conference room, purportedly to

discuss the proposed settlement with Ratcliffe in another office.   Pletcher's PDA/cell phone

remained on the table where he had placed it.   Subsequently, Pletcher re-entered and

exited the room several times.   While Pletcher was out of the conference room, Plaintiffs

discussed matters related to the case as well as personal matters.   At one point, Plaintiffs

began to discuss the fact that Pletcher had left his PDA/phone in the conference room.

While they were doing so, Pletcher entered the room and recommended that, for the 2007-

2008 school year, the year following the school year that was about to begin, Coleman

enroll her child in a particular school specializing in students with learning disabilities, the

Norman Howard School.   According to Plaintiffs, Pletcher's suggestion in that regard was

suspicious, since during the 2006-2007 school year, Coleman's child was in fourth grade,

and would therefore not be old enough to attend the Norman Howard School until the following year. (Burgess Affidavit ¶ 14) ("Pletcher spoke of how Coleman's son needed that school and that it would be appropriate for him the following year (2007-2008)."). In any event, Burgess and Pletcher eventually reached a settlement agreement in principle, after which Pletcher left the conference room and returned a short time later with Ratcliffe and others, including the school's Special Education Director, Sheila McCarthy ("McCarthy."). After some additional discussion to finalize the terms of the settlement, the parties ended the meeting, at which time Pletcher retrieved his telephone/personal digital assistant from the conference table.

On or about November 2, 2006, Plaintiffs served a Notice of Claim pursuant to New York General Municipal Law § 50-e on the defendant school and the defendant school board, "setting forth various state law claims," including claims for "gross negligence" and "intentional infliction of emotional distress." (Complaint ¶ 32; Notice of Claim). In a letter to Pletcher of that date, Burgess specifically alleged that during the meeting on August 4, 2006, Pletcher, Ratcliffe and McCarthy eavesdropped on Plaintiffs:

> My client Carmen Coleman and I have good faith bases to believe that you, Kevin Ratcliffe, and Sheila McCarthy eavesdropped on our conversations during the settlement conference at the District Office on August 4, 2006. We believe that you accomplished this by way of a PDA/cell phone that was dialed to Kevin Ratcliffe's office and that before leaving Ms. Coleman and me alone in the conference room, you placed on a table near where we were sitting.

(Burgess Affidavit Exhibit C). In the same letter, Burgess demanded that Pletcher "produce the cell phone bill pages." (*Id.*). Pletcher did not respond to the demand.

On November 9, 2007, Plaintiffs commenced the subject action, and leveled the same serious accusation against Defendants, to wit: That on August 4, 2006, Pletcher and

Ratcliffe used Pletcher's cell phone/PDA to eavesdrop on Coleman's and Burgess's private

conversations in the conference room.  In that regard, the Complaint states, in relevant part:

> Upon information and belief, before leaving the conference room, Pletcher
> placed a recording device, to wit, a personal digital assistant (PDA) that included a telephone, o
> Burgess and Coleman were alone in the conference room for a least 25 minutes, during
> which time, upon information and belief, their communications were being intercepted by
> the PDA or similar device to Pletcher and Ratcliffe in Ratcliffe's office.

> Upon information and belief, Pletcher dialed Ratcliffe's office telephone
> sometime before meeting with Burgess and Coleman alone, which allowed
> Pletcher and Ratcliffe to listen to Burgess's and Coleman's conversations.
> Upon information and belief, Pletcher and Ratcliffe eavesdropped on
> Burgess's and Coleman's conversations while Burgess and Coleman were
> alone in the conference room.

> During the time that Burgess and Coleman were alone in the conference
> room, they discussed personal matters and factual and legal matters
> pertaining to Coleman's special education impartial hearing request and
> possible federal court action.

(Complaint ¶ ¶ 21-24) (paragraph numbering omitted).  Plaintiffs' complaint purports to set

forth five separate causes of action: 1) "Fourth Amendment"; 2) "18 U.S.C. § 2520"; 3)

"Retaliation" under Section 504 of the Rehabilitation Act; 4) "Section 1983"; and 5)

"Interference with Business."   All of Plaintiffs' claims are based on the alleged

eavesdropping by Pletcher and Ratcliffe. (*See*, Complaint, ¶ ¶ 39-57).

On December 11, 2007, Burgess wrote to the Court and requested a conference,

stating: "At that conference, I will request that the Court ascertain all relevant phone

numbers (including Mr. Pletcher's and Mr. Ratcliffe's cell phone numbers at the time [of the

August 4, 2006 conference] and Mr. Ratcliffe's direct office number at the time).  I will

request that the Court ascertain who the providers for those numbers were and issue

subpoenas for telephone records from August 4, 2006." (Burgess Affidavit Exhibit H).

Pletcher's counsel responded by opposing the request for a conference and for discovery,

5

stating that his client had not even been served with the complaint. Pletcher's attorney further stated: "It is my intention after [service of the complaint] to file with the Court an appropriate dismissal motion addressed at the Complaint, together with a motion for Rule 11 sanctions, seeking redress for what, I am sure, will be demonstrated as an ill-informed and ill-conceived pleading." (*Id*. Exhibit I). On December 13, 2007, Burgess responded by stating, *inter alia*: "I . . . protest the threat of a Rule 11 sanctions motion, which by the terms of that rule is not to be filed or disclosed to a court until after service of a specific motion on the party and the passage of 21 days." (*Id*. Exhibit J).

On January 2, 2008, the Pletcher Defendants filed a combined motion [#4] for summary judgment and for Rule 11 sanctions. In support of the application, Pletcher has submitted a sworn affidavit, in which he denies using his cell phone/PDA to eavesdrop on Plaintiffs. In that regard, Pletcher states that the cell phone/PDA that he left on the conference table on the date in question was his, and bore the telephone number 716-573-4782. Pletcher has submitted a redacted copy of the cell phone records for that telephone number, and states:

> I did not place any phone calls from my PDA/cell phone during the time in which the August 4, 2006 settlement conference was taking place.

> My cell phone provider is Sprint, and my telephone number for my PDA/cell phone is 716-573-4782.

> After receiving notice of the serious allegations brought by Burgess against myself and the District, I secured records from Sprint for the relevant time period in question. The Sprint cell phone records for phone number 716-573-4782 are attached hereto as Exhibit C. These records show conclusively that no phone calls were placed from, or received to, my PDA/cell phone between the hours of 11:15 a.m. and 1:40 p.m. other than a single one-minute incoming call that was received at approximately 11:32 a.m.

> The only phone calls that I placed from my PDA/cell phone on the morning of

the alleged incident occurred before the meeting commenced, were not placed to any District Office, and never exceeded four minutes in duration.

(Pletcher Affidavit ¶ ¶ 14-17). The Court notes that, with regard to the application for Rule 11 sanctions, the Pletcher defendants did not serve the motion on Plaintiffs 21 days prior to filing the motion with the Court, as required by FRCP 11(c)(2). (Burgess Stmt. Of Facts ¶ 38).

On January 11, 2008, the District Defendants filed a combined motion [#12] for summary judgment and for Rule 11 sanctions.  In support of that application, Ratcliffe has submitted an affidavit in which he categorically denies having eavesdropped on Plaintiffs, "using Mr. Pletcher's PDA device or through any other means." (Ratcliffe Affidavit at ¶ 7). Ratcliffe has also submitted telephone records, both for his office telephone and for his personal cell phone, for the date of August 4, 2006, which he maintains show conclusively that he was not in telephone contact with Pletcher's PDA/cell phone during the relevant time.  With regard to the motion for Rule 11 sanctions, the District Defendants also did not comply with FRCP 11(c)'s requirement that the motion be served 21 days before filing with the Court.

On March 23, 2008, Plaintiff Susan Burgess filed her response [#17] to Defendants' motions.  In an affidavit, Burgess offers essentially two main reasons why she believes that Pletcher eavesdropped on the conversation between herself and Coleman.  First, she states that it appeared that Ratcliffe "anticipated" certain questions that Coleman asked at the end of the parties' meeting:

> During my conversations with Coleman alone, she raised several questions about the proposed settlement agreement.  I told her we could ask Ratcliffe

any questions that I could not answer.

*** 

[Later,] [w]hen Coleman began to raise her questions about the agreement, Ratcliffe anticipated the questions and nodded his head and sometimes answered before Coleman finished the questions.

(Burgess Affidavit ¶ ¶ 16, 19).  Second, Burgess states that she and Coleman discussed

a private matter, of which Coleman's aerobics instructor later seemed to have knowledge:

During the course of the settlement conference, Pletcher left and entered the room several times.  During the times he was not in the room, Coleman and I discussed both her case and personal matters.  Among the personal matters Coleman discussed was that she volunteered on Tuesdays with Habitat for Humanity.

*** 

The following Tuesday, August 8, 2006, Coleman attended an early-morning aerobics class.  When her aerobics instructor saw Coleman, she expressed surprise that Coleman was there and said someone had told her that Coleman would not be there.  According to Coleman, several teachers and administrators attend the instructor's classes and Coleman had not told the instructor about volunteering on Tuesdays.

(Burgess Affidavit ¶ ¶ 12, 22 ).  Additionally, Burgess suggests that it was suspicious that,

while Plaintiffs were discussing Pletcher's PDA/cell phone, Pletcher entered the conference

room and began discussing the Norman Howard School.  As for Defendants' production of

phone records, Burgess now contends that Pletcher may have used a PDA/cell phone

belonging to someone else. (*Id*. at ¶ ¶  33-36).

Burgess further argues that the Court should deny summary judgment and permit

Plaintiffs to conduct discovery:

In [moving for summary judgment] defendants attempt to circumvent the discovery process, including plaintiff's right to depose witnesses, subpoena records, and inspect records for authenticity, completeness and accuracy. For example, plaintiffs have not had the opportunity to question whether any defendant has been arrested, charged with, or convicted of violating wiretapping laws in the past.

Such a tactic of attempting to truncate, then dispose of, discovery raises,

8

rather than eliminates, issues of fact not only with respect to the record copies submitted with the motion but with respect to the possibility that another telephone or listening device, other than one bearing the specific cell phone numbers of Pletcher or Ratcliffe that defendants chose to point to, was used.

For example, both Pletcher and Ratcliffe have wives who might have cell phones.  In addition, upon information and belief based on my experience in cases involving school districts, many school districts issue cell phones to their administrative employees.  Defendants purport to disclose Ratcliffe's personal cell phone records but omit any reference to a business cell phone.

(*Id.* at ¶ ¶ 34-36) (paragraph numbers omitted).   Additionally, Burgess states that Defendants' motions to dismiss,

combined with defendants' refusal to provide Burgess any records or even to respond to her requests for them and their outrage when Burgess asked the Court to subpoena not only Pletcher's PDA/cell phone records but records for other phones – could lead any reasonable juror to conclude that Pletcher probably did not use this particular PDA/cell phone to intercept Plaintiff's conversations but some other cell phone or device.

Defendants are attempting to pre-empt any discovery and in doing so gloss over obvious issues of material fact, such as

1. Whether the records submitted with the motions are themselves authentic, accurate and/or complete;

2. Whether the records identified by Ratcliffe as his office phone records do relate to his office phone, as they do not have a phone number on them;

3. Whether Pletcher and Ratcliffe even were in Ratcliffe's office while Burgess and Coleman were together alone, or whether they were in another office within the building, such as McCarthy's;

4. Whether McCarthy has a personal cell phone;

5. Whether Ratcliffe and/or McCarthy have District-issued cell phones; and

6. Whether Ratcliffe, Pletcher and/or McCarthy have spouses or family members who have cell phones.

(Burgess Response [#17-4] at 9-10).

On March 24, 2008, Coleman filed an affidavit [#18] in opposition to Defendants'

motions.   Coleman's affidavit essentially says nothing concerning the alleged eavesdropping.[1]   However, the Court has also been provided with a transcript of Coleman's sworn deposition testimony, taken on February 1, 2007, in which she explains why she believes that Pletcher and Ratcliffe and others eavesdropped.  For example, she states that while they were alone in the conference room, she and Burgess discussed the fact that Coleman's outfit had cost only $20, and that later, a female school district employee entered the room, and stared at her:

> Answer: And so the thing that was really odd is why – after we were getting ready to convene the meeting, we all stood up and we – 'we' meaning Susan and I – walked to the front of the room where [Ratcliffe] and Sheila McCarthy was, and she just kept staring up and down, you know, like she couldn't believe that I paid $20 for this outfit.
>
> Question: Who kept staring up and down?
>
> Answer: Sheila McCarthy.  She was just like looking like she couldn't believe I paid – you know, she was just looking like she was reacting to something that I could have said, in my opinion.
>
> Question: Did she actually – did Sheila McCarthy actually make a statement to you to that effect?
>
> Answer: No, she did not.
>
> Question: Did she say anything to you at that time?
>
> Answer: No, she did not.

(Coleman Transcript at 16-17).   Further, Coleman testified that Ratcliffe seemed to anticipate her questions:

---

[1]Instead, Coleman states that "defendants have behaved irresponsibly by failing to produce records and by the use of a gang of attorneys to both circumvent the law and attempt to intimidate the Plaintiffs." (Coleman Affidavit ¶ 4).  She further alleges that it took the school district approximately two years to address her child's educational needs, and that during that time, she was "intimidated, lied to, and lied about" by unidentified persons. *Id*. at ¶ 7.

> Q. Okay.  Now with respect to Mr. Ratcliffe, was there anything else that Mr. Ratcliffe did that led you to believe that he was somehow privy to your private conversation with your attorney?
>
> A. Body language.  The nodding.  As soon as I started talking, he started nodding his head.  And there was one question that I was beginning to ask him, and we both looked at the spot where the PDA was and then looked at each other, but the PDA had been moved by then.

(*Id*. at 21);(*See also, Id*. at 18) ("And when I asked him a question, he would nod like, "Yeah, I know," and then he would start responding to the question without me asking it completely and fully.").

On April 10, 2008, Pletcher filed, *inter alia*, a reply affidavit [#23], in which he responded to Plaintiffs' suggestion that the phone records produced either do not relate to Pletcher's PDA/cell phone, or that Pletcher used some other device to eavesdrop.  In that regard, Pletcher reiterates that the only PDA/cell phone that he owned or possessed on the relevant date bore telephone number 716-573-4782, for which he has produced his phone records. (Pletcher Reply Affidavit ¶ 2).  Further, Pletcher states that he never used any device to eavesdrop on Plaintiffs. (*Id*. at ¶ 3).  On April 11, 2008, Ratcliffe also filed a reply affidavit, in which he reiterates that he did not eavesdrop on Plaintiffs, and to which he has submitted additional phone records for all of the land-line telephones located in the building at which the August 4, 2006 meeting took place.

On June 5, 2008, Plaintiffs and counsel for the Defendants appeared before the undersigned for oral argument of the motions.  At that time, Pletcher provided the Court with an unredacted copy of phone records for telephone number 716-573-4782, which corroborate his representations that he made no phone calls from his PDA/cell phone during the conference on August 4, 2006.

11

DISCUSSION

*Summary Judgment Standard*

Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See, Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  "[T]he movant must make a prima facie showing that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.).  "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir. 1996)(*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)), *cert denied*, 517 U.S. 1190 (1996).

The burden then shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  To do this, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 249; *see also*, FED. R. CIV. P. 56(e)("When a motion for summary judgment is made and supported as provided in this rule, and adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine

12

issue for trial."). Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993). The parties may only carry their respective burdens by producing evidentiary proof in admissible form. FED. R. CIV. P. 56(e). The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

*Motions for additional discovery under FRCP 56(f)*

A party who needs discovery before responding to a summary judgment motion may make an application pursuant to FRCP 56(f):

> "[A] party resisting summary judgment on the ground that it needs discovery in order to defeat the motion must submit an affidavit showing '(1) what facts are sought [to resist the motion] and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts.'"

*Miller v. Wolpoff & Abramson, LLP*, 321 F.3d 292, 303 (2d Cir. 2003) (citations omitted). A party's failure to follow these requirements may result in summary judgment being granted against him. *Gurary v. Winehouse*, 190 F.3d 37, 43-44 (2d Cir. 1999) ("Indeed, the failure to file such an affidavit is fatal to a claim . . . even if the party resisting the motion for summary judgment alluded to a claimed need for discovery in a memorandum of law."). Even where such an affidavit has been submitted, the court may deny the request for additional discovery "if it deems the request to be based on speculation as to what potentially could be discovered." *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994). Moreover, a party may not use Rule 56(f) as a means of finding out whether it

13

has a case. *Id.* ("Econocom's argument is that it should be allowed to find out if it has a claim, rather than that it has a claim for which it needs additional discovery. Such divagation is decidedly not the object of the discovery procedures outlined in the Federal Rules of Civil Procedure.") (citation omitted).   Nevertheless, summary judgment is very rarely granted where there has been no opportunity for discovery. *Trammell v. Keane*, 338 F.3d 155, 161 n.2 (2d Cir. 2003) ("As a general matter, we agree that "[o]nly in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery.") (*quoting Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir.2000)).

*42 U.S.C. § 1983/Fourth Amendment Claim*

The legal principles applicable to claims under Section 1983 are well settled:

> In order to establish individual liability under § 1983, a plaintiff must show (a) that the defendant is a "person" acting "under the color of state law," and (b) that the defendant caused the plaintiff to be deprived of a federal right. See, *e.g., Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Additionally, "[i]n this Circuit personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.1977).
> ***
> An individual cannot be held liable for damages under § 1983 "merely because he held a high position of authority," but can be held liable if he was personally involved in the alleged deprivation. *See Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir.1996). Personal involvement can be shown by:  evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference ... by failing to act on information indicating that unconstitutional acts were occurring. *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.1995).

*Back v. Hastings On Hudson Union Free School Dist.*, 365 F.3d 107, 122, 127 (2d Cir. 2004).

14

In the instant case, Plaintiffs' Section 1983 claim alleges a violation of their Fourth Amendment Rights.  In that regard, "[t]he Fourth Amendment is concerned with a person's 'constitutionally protected reasonable expectation of privacy.'" *Rodriguez v. U.S.*, 878 F.Supp. 20, 24 (S.D.N.Y. 1995) (*quoting Katz v. United States*, 389 U.S. 347, 360, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring)).

*18 U.S.C. § 2520*

Plaintiffs are also asserting a claim under 18 U.S.C. § 2520, which provides for the recovery of civil damages by persons whose "wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of" Chapter 119 of Title 18, United States Code.  18 U.S.C. § 2520(a).

*Section 504 Retaliation*

Additionally, Plaintiffs contend that Defendants' act of eavesdropping was retaliatory. In that regard,

> retaliation claims brought pursuant to the  ADA and the Rehabilitation Act are analyzed using the same burden-shifting framework used in Title VII cases. *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 148 (2d Cir.2002). To state a prima facie case of retaliation under either the ADA or the Rehabilitation Act, a plaintiff must demonstrate that '(1) he or she engaged in an activity protected by the [Act]; (2) the employer was aware of this activity; (3) the employer took adverse employment action against him or her; and (4) a causal connection exists between the alleged adverse action and the protected activity.' *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir.2002). A plaintiff's burden at the prima facie stage is de minimis. *Id* .; *see Richardson v. New York State Dep't. of Correctional Serv.*, 180 F.3d 426, 444 (2d Cir.1999). 'If the plaintiff meets this burden and the defendant then points to evidence of a legitimate, nonretaliatory reason for the challenged employment decision, the plaintiff must point to evidence that would be sufficient to permit a rational factfinder to conclude that the employer's explanation is merely a pretext for impermissible retaliation.' *Cifra v. G.E. Co.*, 252 F.3d 205, 216 (2d. Cir.2001).

*Webster v. Pomperaug Regional School Dist. 15*, No. 3:04CV1265(DJS), 2007 WL 987539

at *15 (D.Conn. Mar. 30, 2007).

Based upon the undisputed facts and applicable principles of law, the Court finds that Defendants have provided evidentiary proof in admissible form indicating that they did not eavesdrop on Plaintiffs as alleged in the complaint, and in response, Plaintiffs have come forward with nothing but rank speculation. *See*, *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (Holding that, in opposing a motion for summary judgment, "[t]he non-moving party may not rely on conclusory allegations or unsubstantiated speculation.") (citation omitted).  As to that, the conclusions that Plaintiffs have drawn from the facts of this case are patently unreasonable.  For example, and at the risk of belaboring the obvious, it is not reasonable to believe that someone illegally eavesdropped on your conversation because they "look at you funny."  Nor is it reasonable to believe that you are the subject of a vast eavesdropping conspiracy, merely because your aerobics instructor expresses surprise at seeing you in her class on a particular day.[2]

Nor have Plaintiffs demonstrated that they should be permitted to conduct discovery. In that regard, neither Plaintiff has submitted a proper Rule 56(f) affidavit.  Moreover, even assuming *arguendo* that Plaintiffs had met the procedural requirement of filing a Rule 56(f) affidavit, their demand for discovery, in addition to being essentially unlimited in scope, is purely speculative as to what potentially might be discovered.  In short, this is one of the

---

[2]Plaintiffs do not allege that on August 4, 2006, Coleman stated that she would not be attending her Tuesday aerobics class.  Rather, they allege that she said only that she said she volunteered with Habitat for Humanity on Tuesdays.  Plaintiffs' wild theory therefore assumes that the eavesdropping listener mistakenly concluded that a person who volunteers with Habitat for Humanity at an unspecified time on Tuesdays necessarily cannot also attend an early-morning aerobics class, and that the listener then went out of his or her way to share this useless information, obtained through illegal means, with Ms. Coleman's aerobics instructor.  What is even more bizarre is that Coleman apparently never asked the aerobics instructor to explain her comment.

aforementioned "rarest of cases" in which summary judgment is appropriate prior to discovery.

Turning to Defendants' motion for sanctions under Rule 11, it is clear that Defendants failed to comply with the procedural requirements of FRCP 11(c)(2).  In that regard, Defendants did not file their applications "separately from any other motion," but instead, combined the motion with their motion for summary judgment.  Additionally, Defendants failed to serve the motions on Plaintiffs at least 21 days before filing.  Consequently, Defendants' applications for sanctions are denied.

CONCLUSION

For the foregoing reasons, Defendants' motions [#4][#12] are granted in part and denied in part.  The applications for summary judgment are granted and the applications for sanctions are denied.  The Clerk of the Court is directed to close this action.

SO ORDERED.

Dated:        Rochester, New York
                 June 20, 2008
                                              ENTER:


                                              /s/ Charles J. Siragusa
                                              CHARLES J. SIRAGUSA
                                              United States District Judge